**UNITED STATES of America, Appellee,**

v.

**Daniel William HALLS, Appellant.**

**No. 94–2561.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1994.

Decided Nov. 10, 1994.

Rehearing Denied Dec. 13, 1994.

Alfredo Parrish, Des Moines, IA, argued for appellant.

Clifford D. Wendel, Des Moines, IA, argued for appellee (Don C. Nickerson and Cliff Wendel on the brief).

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Daniel William Halls pleaded guilty to and was sentenced for conspiracy to distribute cocaine and methamphetamine in violation of 21 U.S.C. § 846. He appeals from the denial of his motions to suppress evidence and to dismiss on double jeopardy grounds and from the sentence imposed by the district court. We affirm.

## I.  Background

On December 7, 1992, Halls was stopped by the Missouri highway patrol approximately ten miles south of the Iowa border while heading north on I–35 in a rental car with Texas license plates. The car was moving slower than the rate of traffic and contained no visible luggage. Both Halls and his passenger avoided eye contact when the patrol car pulled up next to Halls' vehicle. Halls and the passenger consented to a search and were arrested when drug paraphernalia and a gun were found in the passenger's purse.

Federal and state authorities were waiting for Halls at the Iowa border because he was the target of a federal investigation regarding drug trafficking between Arizona and Iowa. A federal drug agent driving by the scene of Halls' arrest noticed that the car which federal and Iowa state agents planned to search pursuant to an Iowa search warrant had already been pulled over. A Missouri search warrant was obtained to search the car on the strength of the initial stop and the Iowa warrant. Evidence found pursuant to the search was used as a basis for the charges against Halls. Halls entered a plea agreement to Missouri state drug trafficking charges. Halls also faced a subsequent federal conspiracy indictment that led to a second plea agreement and this appeal.

## II.  Discussion
### A.  Fourth Amendment Claim

■ The reasons articulated by the Missouri trooper were insufficient to provide a reasonable suspicion justifying an investigative stop. "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Garcia,* 23 F.3d 1331, 1334 (8th Cir.1994); *see United States v. Cummins,* 920 F.2d 498, 501 (8th Cir.1990) (noting standard of objective reasonableness required for stop), *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). Although any traffic violation "creates probable cause to stop the driver of a vehicle," *United States v. Barahona,* 990 F.2d 412, 416 (8th Cir.1993), Halls violated no traffic laws. Merely avoiding eye contact with state troopers while driving a vehicle with no visible luggage and out-of-state plates fails to give rise to an objectively reasonable inference of illegal activity. These factors also apply to any number of law-abiding citizens travelling for completely legitimate reasons. *See Garcia,* 23 F.3d at 1334–35. Thus, the officer's inarticulable hunch provided an insufficient basis to support the stop. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *United States v. Poitier,* 818 F.2d 679, 683 (8th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988). The government conceded this point at oral argument, and we agree that any finding that the stop was not pretextual cannot withstand analysis.

■ This does not end our inquiry, however. The inevitable discovery exception to the exclusionary rule articulated in *Nix v. Williams,* 467 U.S. 431, 440–50, 104 S.Ct. 2501, 2507–12, 81 L.Ed.2d 377 (1984), allows the government to show by a preponderance of the evidence that the evidence seized would have been discovered in any event by lawful means. *Id.* at 444, 104 S.Ct. at 2509. Halls asserts that application of the inevit-

able discovery doctrine in this instance would be too speculative, citing *United States v. Owens,* 782 F.2d 146, 153 (10th Cir.1986). We disagree.

In *Owens,* the police argued that evidence illegally seized from a motel room would have been inevitably discovered by the motel maid. In rejecting this argument, the court noted that the motel staff "would not necessarily have ... searched" the defendant's luggage and containers and that "the lack of any police involvement in routine room cleanings suggests that police discovery of the evidence would not have been inevitable." *Id.* Additionally, someone could have returned to the room and retrieved the contraband before it was discovered. As a result, the unconstitutional search "tainted the only police investigation that was ongoing." *Id.* at 152.

Such was not the case here, however, for federal and Iowa state agents were awaiting Halls' arrival pursuant to an entirely independent investigation. They had a complete vehicle description and were aware of Halls' exact travel route. An agent was stationed on the Missouri side of the border, ready to follow Halls into Iowa when he appeared on the interstate. When Halls did not arrive at the Iowa border as expected, the agent found him already stopped by the Missouri highway patrol. In *Owens,* the inevitable discovery doctrine did not apply because the discovery was dependent upon the speculative intervention of a third party who had no connection to an ongoing investigation. In contrast, the evidence seized from Halls' vehicle as a result of the insupportable Missouri stop would necessarily have been found as a result of the Iowa warrant because Halls would have been legitimately detained at the border. Suppressing the evidence would impermissibly place the prosecution "in a *worse* position simply because of some earlier police error or misconduct." *Nix,* 467 U.S. at 443, 104 S.Ct. at 2508.

**B. Sentencing**

Halls also challenges the district court's application of a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) for the presence of a firearm, asserting that the increase was inappropriate because the weapon should have been suppressed. Our resolution of the suppression issue also resolves this issue, however, and the two level increase was therefore appropriate. *See United States v. Maxwell,* 25 F.3d 1389, 1398–99 (8th Cir.1994) (discussing weapon enhancement under the sentencing guidelines), *cert. denied,* —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994).

**C. Double Jeopardy**

■ The Missouri substantive drug trafficking offense to which Halls pleaded guilty was specific to his December 7, 1992, arrest. The federal conspiracy charge encompassed a time frame dating from the fall of 1991 through most of 1993. These two crimes differ in the substantive elements necessary to support a conviction and do not give rise to double jeopardy. *United States v. Felix,* —— U.S. ——, ——–——, 112 S.Ct. 1377, 1384–85, 118 L.Ed.2d 25 (1992). Even though the substantive offense was within the time frame of the conspiracy, "the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself." *United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947); *see United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2863, 125 L.Ed.2d 556 (1993); *Felix,* —— U.S. at ——–——, 112 S.Ct. at 1384–85; *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946).

■ Additionally, "[i]t is well-established that the 'same acts' in a state proceeding may be the basis for a federal prosecution." *United States v. Kummer,* 15 F.3d 1455, 1460 (8th Cir.1994); *see Abbate v. United States,* 359 U.S. 187, 193–96, 79 S.Ct. 666, 669–71, 3 L.Ed.2d 729 (1959). Indeed, even if Halls could devise a persuasive argument that the conspiracy charge comprised the same elements as his substantive Missouri plea, "two identical offenses are *not* the 'same offense' within the meaning of the Double Jeopardy Clause if they are prosecuted by different

278

sovereigns."[1] *Heath v. Alabama,* 474 U.S. 82, 92, 106 S.Ct. 433, 439, 88 L.Ed.2d 387 (1985). Halls asserts that he should be excepted from the dual sovereignty doctrine because the two prosecutions are actually a "tool of the [same] authorities." *Bartkus v. Illinois,* 359 U.S. 121, 123, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). Not so, for the federal and state authorities represented their own sovereign interests in their respective investigations and actions against Halls. Halls has failed to show an attempt to circumvent the strictures of the Double Jeopardy Clause by the multiple proceedings.

The judgment is affirmed.

---

**1.** It is a Department of Justice policy to not further prosecute someone already subject to a state prosecution. *See Petite v. United States,* 361 U.S. 529, 531, 80 S.Ct. 450, 451–52, 4 L.Ed.2d 490 (1960); *United States v. Wallace,* 578 F.2d 735, 739–40 (8th Cir.), *cert. denied,* 439 U.S. 898, 99 S.Ct. 263, 58 L.Ed.2d 246 (1978). This is an internal policy, however, and as such is not enforceable against the government. *Kummer,* 15 F.3d at 1461; *United States v. Simpkins,* 953 F.2d 443, 444–45 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992).